J-A19008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| VASYL S. KOVALCHUK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YELENA V. KOVALCHUK | : | |
| | : | |
| Appellant | : | No. 537 MDA 2022 |

Appeal from the Order Entered March 14, 2022
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2016-03340

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  OCTOBER 3, 2022**

Yelena V. Kovalchuck ("Mother") appeals *pro se* from the order entered on March 14, 2022, wherein the trial court found Mother in contempt of the July 1, 2019 custody order, imposed sanctions, and denied Father's request for sole legal custody.  We reverse the finding of contempt and award of sanctions and affirm all other aspects of the order.

Mother and Father are parents to two minor children, M.K., born in December 2006, and J.K., born in June 2008 (collectively, "the Children"). The parties have had an extremely contentious custody battle, which commenced with Father's filing of a complaint for custody on June 13, 2016. Following extensive pre-trial litigation, a custody trial was held on March 29, 2018, which resulted in an April 24, 2018 custody order.  This Court affirmed

---

[*] Former Justice specially assigned to the Superior Court.

on October 11, 2018. ***See V.S.K. v. Y.V.K.***, 200 A.3d 556 (Pa.Super. 2018) (unpublished memorandum).

Father subsequently filed a petition for contempt and for the modification of the April 24, 2018 custody order. One component of Father's petition sought to require the parties to obtain passports for the Children and for those passports to remain in the custody of Father, his counsel, or a third party. Following an evidentiary hearing on June 13, 2019, the trial court entered an interim custody order that provided, *inter alia*, "[t]he Children's passports shall be renewed, and upon renewal, the passports are to be given to the Prothonotary's Office here in Cumberland County which shall hold them for release upon further court order." ***See*** Order, 6/13/19, at ¶ 2. However, the interim order was subsequently vacated, and neither party moved to enforce the relevant provisions concerning the Children's passports.

Following additional hearings, the trial court entered an amended custody order on July 19, 2019, which provided the parties with joint legal custody and shared physical custody on alternating weeks. In pertinent part, this order specified that "[t]he parents shall have an equal right to make all major non-emergency decisions affecting [the Children's] general well-being including, but not limited to, all decisions regarding their health, education, and religion." Order, 7/19/19 at ¶ 1(a). The order further provided that "[n]otwithstanding that both parents share legal custody, non-major decisions involving [the Children's] day-to-day living shall be made by the parent then having custody, consistent with the other provisions of this Order." ***Id***. at

1(e). Significantly, the July 19, 2019 order, which is the operative custody order, is silent as to any provisions regarding passports or international travel.

Thereafter, on May 11, 2021, Mother unilaterally obtained passports for the Children. *See* Trial Court Order, 3/14/22 at Conclusions ¶ 1. In anticipation of a vacation with the Children, Mother, via text message on August 6, 2021, asked Father to sign a travel consent form in relation to a trip to Niagara Falls with her church group. *Id*. at Findings ¶ 15. *Id*. Father, under the impression the Children did not have active passports and that his permission was unnecessary for interstate travel, agreed to sign the forms, but indicated on the form that he was only consenting to domestic travel. *Id*.

The next day, Mother took the Children on vacation to the Dominican Republic.[1] *Id*. at Findings ¶ 21. Following their departure, Father checked the Department of State's website to inquire about the Children's passport status and discovered that Mother obtained expedited service of the Children's passports. *Id*. at Findings ¶ 17. Father inquired as to the Children's location, but Mother refused to provide an answer. *Id*. After contacting both children via different messaging applications, the Children provided Father with

_____

[1] Mother's trip to the Dominican Republic was not the purported church trip to which Mother sought Father's written permission. Rather, the trial court found that Mother fabricated the church trip. *Id.* at Conclusions ¶ 4.

conflicting information as to where they were vacationing.[2] *Id*. at Findings ¶ 18.

Accordingly, Father filed a petition for emergency special relief on August 18, 2021, alleging that Mother fraudulently obtained passports for the Children and took the Children on a vacation outside of the United States without his express permission. Father sought sole legal custody, attorneys' fees, and an order directing Mother to surrender the Children's passports to the Cumberland County Prothonotary. On August 30, 2021, the trial court referred the matter concerning the vacation and travel plans to the custody conciliator, denied any additional special relief requested in Father's petition, and advised Mother that the parties shared legal custody, which encompasses traveling international, as that constitutes a major decision regarding the welfare of the Children. *See* Order 8/30/21 at 1.

Thereafter, Father filed a petition for contempt and for the modification of the July 19, 2019 custody order. Again, the trial court consolidated the issues raised in Father's petition with the previously scheduled conciliation conference.[3]

_____

[2] Specifically, M.K. told Father they were in Florida and J.K. told Father they were in Delaware. *Id*.

[3] As part of the petition for modification, Father sought to amend the custody order to have the children vaccinated against COVID-19 because Mother refused to consent to vaccination.

Following custody conciliation, the July 19, 2019 order was amended to include specific provisions regarding domestic and international travel.[4] **See** Order, 10/12/21 at ¶ 3. The matter concerning Father's petition for contempt and modification of legal custody was listed for a hearing on January 19, 2022.

_____

[4] Specifically, the order provides in pertinent part:

> **DOMESTIC TRAVEL:** If either parent is planning a trip in the United States with the Children, they shall provide the other parent with at least thirty (30) days written notice of the vacation dates. The vacation weeks supersede the regular physical custody schedule. In the event the parties have conflicting vacation dates, the party giving written notice first has priority. Prior to departure, the parties will provide each other with information regarding the intended vacation destination and a telephone number at which they can be reached during their vacation. The parties may expand this vacation time by mutual agreement. If either parent schedules a vacation that occurs during the other's (sic) parent's custodial week, they shall provide the parent with make-up time for the missed days of custody.

> **INTERNATIONAL TRAVEL:** If either parent is planning a trip outside the United States with the Children, they shall provide the other parent with at least thirty (30) days written notice of the vacation dates and obtain a notarized letter from the other parent consenting to the travel outside of the United States with the Children. The vacation weeks supersede the regular physical custody schedule. In the event the parties have conflict vacation dates, the party giving written notice first has priority. Prior to departure, the parties will provide each other with information regarding the intended vacation destination and a telephone number at which they can be reached during their vacation. The parties may expand this vacation time by mutual agreement. If either parent schedules a vacation that occurs during the other's (sic) parent's custodial week, they shall provide the parent with make-up time for the missed days of custody.

**See** Order 10/12/21 at ¶ 3.

A trial was held as scheduled, at which Father, Mother, and the Children testified.[5] On March 14, 2022, the trial court entered an order that (1) found Mother in contempt for violating Father's legal custody rights; (2) directed Mother to pay a $500.00 fine to Father; (3) ordered Mother to pay all reasonable counsel fees and costs specifically associated with any litigation regarding the Children's passport and travel to the Dominican Republic[6]; and (4) denied Father's petition for modification for sole legal custody.

In finding Mother in contempt and imposing the above-noted sanctions, the trial court specifically determined that Mother had notice of the operative custody order, which we observe did not include any provisions regarding passports or international travel. **See** Trial Court Order, 3/14/22 at Conclusions ¶ 6. Nevertheless, the trial court concluded that Mother's renewal of the Children's passports, without Father's knowledge and consent, and her travel with the Children outside the United States constituted violations of Father's shared legal custody. **Id**. at Conclusions ¶ 7. Moreover, the court found Mother's actions were volitional and committed with wrongful intent as

_____

[5] Father also presented Diana Rudy, PA-C, who testified about the Children's need to receive the COVID-19 vaccine. As that issue is not presently before this Court, we do not address her testimony.

[6] The order directed Father's counsel to file documented proof of the reasonable counsel fees and costs within 10 days and serve a copy on Mother. Mother shall then have 10 days to file objections. Father's counsel complied on March 17, 2022. On March 24, 2022, Mother filed objections to the award of counsel fees.

she refused to inform Father where the Children were located during her travels. *Id*.

On April 1, 2022, Mother filed the instant timely appeal; however, she neglected to concurrently file a statement of errors complained of on appeal as required by Pa.R.A.P. 905(a)(2) and Pa.R.A.P. 1925(a)(2). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), which relies on the findings and conclusions of the March 14, 2022 order. In light of Mother's failure to file a concomitant concise statement of errors complained of on appeal with her notice of appeal, this Court directed Mother to file a concise statement in the trial court on or before May 9, 2022. Mother complied on May 6, 2022.[7] The trial court declined to issue a supplemental Pa.R.A.P. 1925(a) opinion in response to Mother's concise statement.

While phrased as a single question, Mother's brief presents three issues for our review: 1) whether the trial court erred in finding Mother in contempt for violating Father's legal custody; 2) whether the trial court erred when it permitted certain testimony but excluded other testimony by Mother; and 3) whether the trial court erred when it imposed attorneys' fees without a hearing as to the amount of those fees. *See* Appellant's Brief at 5-6. Mother first

---

[7] While Pa.R.A.P. 1925 requires the concomitant filing of a concise statement with the notice of appeal in a children's fast track matter, the failure to comply with this rule is considered a defective notice of appeal and this Court will not dismiss since failure is merely a violation of a procedural rule and not an order of court. *See In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009). Accordingly, this Court will address the merits of the appeal.

asserts the trial court abused its discretion when it held her in contempt for violating Father's legal custody rights. Specifically, Mother argues that the operative custody order was too vague as it did not explicitly state that Mother could not obtain passports or travel internationally during her periods of custody. Thus, Mother argues her actions were not contemptuous, and the trial court erred in finding her in contempt.

This Court reviews contempt orders for an abuse of discretion. **K.M.G. v. H.M.W.**, 171 A.3d 839, 844 (Pa.Super. 2017). A trial court "abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure." **Id**. In order to be found in contempt, the complainant must prove "by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Harcar v. Harcar**, 982 A.2d 1230, 1235 (Pa.Super. 2009). Moreover, when determining whether a contemnor acted with wrongful intent, the trial court should consider both common sense and the context of the party's actions. **Commonwealth v. Reese**, 156 A.3d 1250, 1258 (Pa.Super. 2017). Furthermore, we defer to the trial courts credibility determinations where they are supported by the record. **See Harcar**, **supra** at 1236.

The trial court found that Mother's actions constituted a violation of the shared legal custody provision of the operative custody order. Specifically, it

concluded that Mother's actions of renewing the Children's passports and traveling with the Children abroad constituted major decisions involving the Children. The material facts are not in dispute. Mother admittedly obtained passports for the Children without the consent or knowledge of Father and proceeded to travel internationally with the Children to the Dominican Republic during her period of custody. Thus, the question before this Court is whether Mother's actions constituted a violation of the July 19, 2019 custody order. For the reasons explained, *infra*, they did not.

Legal custody is defined as "the right to make major decisions on behalf of the child, including, but not limited to, medical, religious and education decisions." 23 Pa.C.S. § 5322. The operative custody order did not include any specific language regarding international travel. Notably, the order did direct that "**Father** must advise Mother a minimum of 30 days in advance of his intent to exercise this vacation period based on his work schedule." ***See*** Order, 7/19/19 at 2(d) (emphasis added). The order omitted a similar notice provision regarding Mother.

More importantly, the operative custody order did not incorporate a provision regarding passports or embrace any restrictions regarding travel. When fashioning the order, the trial court could have provided a more narrowly tailored provision regarding travel. ***See O.G. v. A.B.***, 234 A.3d 766, 775 (Pa.Super. 2020) (finding that it was within the trial court's discretion to instruct both parents not to travel with the children internationally without the consent of the other parent). However, it declined to do so. Although a prior,

interim custody order directed the parties to obtain passports for the Children and to hold the passports in the Cumberland County Prothonotary's Office, that provision was not included in the final custody order that the court entered in its place on July 19, 2019. Thus, while furtive and seemingly devious, Mother's actions did not violate a specific provision of the custody order.[8] *See J.M. v. K.W.*, 164 A.3d 1260, 1266 (Pa.Super. 2017) (*en banc*) (finding the trial court erred in finding mother in contempt for registering the child in daycare of her choice when the custody order was silent as to legal custody). Accordingly, the trial court erred in finding Mother in contempt of the July 19, 2019 order and by imposing sanctions on that basis.

In light of our determinations that Mother did not contravene the terms of the July 19, 2019 custody order and that the attendant sanctions were unwarranted, we do not address Mother's remaining arguments concerning the exclusion of certain evidence during the hearing and the reasonableness of the award of attorneys' fees. Similarly, we do not disturb the portion of the order denying Father's request for sole legal custody.

Order affirmed in part and reversed in part. Jurisdiction relinquished.

---

[8] While Mother did not flout a specific provision in the final custody order, this Court notes with displeasure Mother's multiple misrepresentations to Father and her surreptitious conduct regarding the passport application process and her international travel plans.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/03/2022